Do you want to take a break after the break? Okay. Do you want to take a break? I'm okay right now. Okay. All right, Sir and Mr. Welch. Judge Jones, Judge Jolly, and Judge Dennis, good morning. I'm Keith Welch. I'm the attorney for Mr. and Ms. Booker. Mr. and Ms. Booker filed a 13 about two years ago, a Chapter 13. They had become behind on their two vehicles. They were both working at the time. They were both drawing Social Security, both. Mr. Booker was 76 at the time. They had very little debt. There's not a lot of money involved in this case. They had two debt, two $20-something vehicles they were paying for. They had a small furniture loan they were paying back, about $2,300. They had about $5,000 of unsecured debt. And they had a finance company debt, First Heritage, with about $4,000. The secured value of that was negotiated down to $3,100, and that $3,100 was being paid along with about $1,200 of the $5,000. At the time, you didn't know it was going to be $5,000. You listed $24,000, right? That's correct, Your Honor. We tend to list all debts that are potentially there. We listed many of those debts as disputed because we believe they were prescribed or maybe they were in some cases might have been duplicates. Well, anyway, I was just wondering. No, you're absolutely correct, Your Honor. And in the end, it was just over $5,000 that were allowed debts. Mr. and Ms. Booker were paying more than is required by law. They were paying more than is required by Chapter 7. They were paying more than the liquidation value. They were using all of their Social Security income to fund the plan. Unlike Regos, we weren't using just a small portion of their Social Security. They were dedicating all of their income and all of their Social Security income to be able to fund this plan. The plan went longer, went 59 months, I believe, the proposed plan that we wanted approved. It paid those debts. We believe the court used, and I believe it's obvious from the transcript itself, used the wrong legal standard. We believe the court adopted a per se approach to good faith. I think that's absolutely wrong. I'm not saying whether I agree or disagree with the court's finding of lack of good faith, but you argued every bit of the appropriate criteria to the court. The court is no schmo. He knows what the law is. And I think we would be misinterpreting his view to say that he didn't know the standard. No, sir. I did not say he did not know the standard. Well, or that he didn't apply it. Well, that is what I believe happened, and I think it's partly evidenced by the court's own words before the hearing actually started. The court said, and it's really a matter of appearance, do we let debtors have a third car, have a boat when they're in Chapter 13? Let me ask you a question. I mean, what struck me about this particular matter, and I'll agree with you, it's not $100,000 credit card debt, but people in their 70s having two late model cars, late model low mileage cars, people in their 70s having a riding lawnmower on nine acres, shoot, that's a pretty nice lifestyle. Having a 52-inch flat screen TV and a 36-inch flat screen, three TVs actually, in a double wide, they must have TVs all over the place. Three TVs, Your Honor? Yes, sir. And I would suggest that those are normal, everyday things these days. Late model cars? With the time, they've been $25,000 each on them? That was about right. At the time, they were both working full-time. They were both old and $700 a month is full-time? I believe Mr. Booker was working full-time. I believe, by recollection anyway, that Ms. Booker may have been working part-time. Mr. Booker was a supervisor. Of course, there's some water under the bridge now because they have now no longer able to work and they've surrendered one of the cars. But at the time, they had different schedules. They had surrendered one of the cars when they filed Chapter 13. They probably, the judge might not have had such a problem with the situation. Well, that's possible. What was the basis for the judge's finding of bad faith? I fail to see that in the record. Well, Your Honor, I don't — I don't — I guess these people — We have his transcript. He shouldn't have had late model cars, but this man was — No, sir. No, sir. In fact — 76 years old. He'd had a stroke. His wife was trying to manage depression. The record's kind of skimpy, but they made these points. And from these points, I can't see where the judge found any bad faith on their part. He found bad faith, in my opinion, Your Honor, because he has a no-boat policy. It's really that simple with all due respect. Well, you're a — A no-boat. Okay, so you're a lawyer who does a lot of these cases. Is that right? Yes, ma'am. Are you representing to the court, as an officer of the court, that this judge has a no-boat policy, or is that just your inference from one adverse ruling? No, sir. It's based on the judge's statement, more or less, and — So he — so you are inferring a policy from one statement. You haven't — No, ma'am. As an officer of the court, you're — You're permitted to do that. As an officer of the court, Your Honor, I'd like to answer that question. It's that for four years, the judge that was there at the time is not there now. That's not the question I asked you. No, sir. I apologize. From what did he infer bad faith? He said that it didn't comply — the only words that I know of is that he said that they were keeping a boat and it didn't comply with the spirit of the bankruptcy code. He said you can't keep all the goodies. He also said you can't keep the goodies. He said that before the hearing. He said that before the hearing. And the lien included the boat, the trailer, the motor, the riding lawnmower, and all the TVs. All of those things together were negotiated value of $3,100. So the question is, is it — was it reasonable to pay that $3,100? And to answer Judge Dennis's question, there never was and there hasn't been any argument about the debtor's ability to pay. They were dedicating all of their disposable income plus non-disposable income to it. Well, I looked at — There was no objection from the creditor. There's no objection for the trustee. That's correct. He doesn't say anything when it's analyzed in good faith except he keeps pointing to the boat. So I would say the man had — in this particular case, for sure he had a no-boat policy. It's what the record indicates. Maybe he had a no-riding lawnmower policy. No, he didn't say anything about the lawnmowers. He said a lot about the boats. I agree, Judge Jolly and Judge Jones, to go back to — to go back to your question because I don't feel like I completely answered you. Yes, ma'am. Yes, Your Honor. He did have a no-boat, no-third-car, no-motorcycle policy, and that wasn't just in this case. Well, in the family, I'd say a third car would definitely be excess. And in most cases, I would agree with you, and practically in almost all cases, but you still have to use a totality-of-the-circumstances analysis. And that's what I don't think he ever did. I was — I know all about this. Yes, ma'am. Do you have any other cases — and I'm, you know, I'm not detracting from the position of these particular individuals, but do you have any other case where a circuit court has overturned a finding of lack of good faith? I didn't think of that. On a factual basis, because that's what we'd have to hold as a matter of clear error. Well, you're saying it's legal error, but — Chafin would be what comes to mind, Your Honor. That's an older case of this Court. Yeah, but that didn't overturn it, right? That reversed it. Am I misremembering? I believe it reversed it, Your Honor. And it's a very — Thirty-some years ago. Yes, sir. Yes, ma'am. Before Chapter 13. It's a 13 case, and — Well, I know. Before the current Chapter 13. It was in — it was after the Code was enacted. Right. Before the BAP-CEPA amendments. Right. And in that case, there was another per se where the — where the district court basically — excuse me, the bankruptcy court and the district court essentially said, well, it's per se, you're trying to discharge a nondischargeable debt, and that's per se not allowed. And this Court said, well, we review that because it was a per se approach to something. We review that as a de novo review, not clear error review. I suggested to the Court this was clear error, but I also suggested to the Court they use the — he used the wrong legal standard. I also looked at your schedules, and if I understood them correctly, you're saying they committed every bit of their disposable income, including their Social Security. But I didn't — I mean, some of this — some of their schedules said $150 a month for clothing, several hundred dollars a month for food. And you're talking about an elderly couple, from which I know a little bit. And, you know, I mean, some of those allowances seemed quite generous to me. Those are all equal to or lower than, in most cases, the IRS collection standard allowances, which are considered reasonable for above-median debtors. And below-median debtors don't eat less than above-median debtors. Below-median debtors don't have less to get by on. Plus, it is — Did the bankruptcy judge say anything about food and all that? No. In fact, the bankruptcy judge said the opposite. He said it was not an issue. This is not an issue about disposable income or money or how much is being paid. That was never the issue. He said they didn't need the fish they caught to live on. They had enough money for food. And he said you don't need a boat to fish, too. He said a lot of things that didn't make a lot of sense to me, but — Well, those are — and that's a fact. A debtor doesn't need a boat to fish, but I don't think it has anything to do — doesn't go to the argument of good faith in this case. Certainly, these people had — Well, they've had two more years of their boat. Are they still using it? They are still using it. I did check with them just earlier this — last week. You're 78 years old. How do you take it down to the boat ramp and get it out? That requires some physical exertion, doesn't it? I would suggest that notwithstanding the stroke, he's in remarkably good health, remarkably clear-minded. He has some hearing issues you may have picked up on the transcript. But he regularly uses the boat. His wife goes with him. He doesn't have his truck anymore, so his son has allowed him to use an old pickup truck to keep it to haul the boat. But they still do what they're doing. But for the generosity of the attorney representing First Heritage, they would be without the boat. They would be out there riding lawnmower. I don't know what he would be doing. Without the flat-screen TVs. Yes, ma'am, but 13 is not a vehicle for punishment of debtors. If you're paying the disposable income for the commitment period and you're paying more than it was otherwise required — So you're saying we should have a per se rule that a 4 percent plan, because it looked like a 4 percent plan at the time, is acceptable and you can keep whatever you can keep? Of course not. That would be — See, that's the problem I have. No, no. You should not have such a per se rule. You should analyze every one of these cases and the totality of the circumstances. Are they meeting the economic requirements of the plan, of the code? Yes, they are. And they're exceeding them. Are they acting in good faith? Is there some reason to believe they've misrepresented the facts? Is there some reason to believe they're acting with malice towards the court? Anything like that. They were behind on a lot of things. They were living above their means, arguably, prior to that time. I don't think there's much question about that. But the budget going forward was not disputed by the court, by the trustee, by the creditors, or by anyone. The question really is, does a 70-something-year-old man who gets the only recreation he has, is he allowed to keep an old fishing boat, a 16-foot fishing boat, to do the one thing that allows him to protect his health and his wife's? And when nobody objects. No one objected. It's a practical matter. Bankruptcy should be applied practically. And the creditor is the one that's trying to be protected here. And the creditor doesn't object. The trustee is the one that has the charge of the administration, trying to see that everything is done fairly and within the law. He doesn't object. Let it go. Well, why do old people get a better deal than other people do? Well, I don't know. We could put everybody 30 years old on Social Security. Judge Jones, that's a puzzlement to me, but it's probably because of the statutory language of Social Security. I mean, I appreciate your tugging at the heartstrings and all that, but if this couple were 35, we'd probably look at this case a lot differently. And the main reason I say so is, you say, you know, I've never owned a boat. I never thought we could afford a boat. But, you know, it's different. You could have bought this boat. This boat? Ah, maybe so. But I don't have nine acres either. And you're telling me the man has no exercise and no way to enjoy life when he has three TVs and nine acres and a riding lawnmower that he can get on to his heart's content? Because, again, that's something that requires some physical activity. I used to have a riding lawnmower. I never thought of it as something pleasurable, Your Honor. Oh, come on. If you have nine acres, you're a very lucky person. Well, he does not live in an expensive home. He lives in a double-wide mobile home. I understand it's a double-wide, but you get to listen to the birds in the morning. I've got the sun in the morning and the moon at night. And I'm not, again, I'm really trying to put the equity in perspective. Okay, that's all. It's possible, Your Honor, that if he hadn't had a stroke, if his wife hadn't suffered depression, if he had been 38 years old, it's possible I wouldn't be here today because these cases cannot practically or economically be brought to this level. It's taken two years to get here plus. But you're lucky that it did. Well, and we're also lucky that we were able to convince First Heritage's attorney to allow the debtor to keep these items pending the appeal. They didn't have to do that. It would be two years ago they would have given all this stuff back. And I think that would have been wrong. I've made that clear. I think that for the use of the boat, particularly how important it was for their health, the testimony that Mr. Booker said was it was very, very necessary. I have one other technical question. Did any of that unsecured debt constitute above the value of the collateral? Yes, ma'am. The Heritage or others? The First Heritage debt, if I remember right, about $800 of that was transferred over into that $5,000. So the debt was actually less. So a certain portion of the unsecured that they have, the $600 that they've agreed to pay, would go to Heritage? No, ma'am. First of all, it's $1,200 and something dollars, and that was always the amount. The way the plan was done at that time, you had to. . . I'm saying now. Now. Now. There's $5,000 of unsecured debt, $5,038 or something. And some of that is owed to Heritage. About $800 of that is for Heritage. So there's $4,200 and $800, roughly. That's all put into a pot. And then the $1,200 that's distributed goes pro rata into that pot. I understand that. What I'm saying is that it is the case that part of that unsecured distribution goes to Heritage. Yes, ma'am. Okay, that's all I meant. Thank you. You have time for a vote. Okay, Mr. Johns, you didn't object. He said you don't even have a right to be here, but I suppose you have to defend the revised plan. Right? Your Honor, may I please have the Court. If Article III is applicable in this case, where is the controversy? As far as the appellee? Who has the controversy? The trustee agrees, the creditor agrees, the bankrupt agrees. No, he did, but now he's not. Where is the Article III controversy? Your Honor, I am the named. . . may I please have the Court, for the record. My name is Todd Johns. I'm the Chapter 13 trustee for the Shreveport Division in the Western District of Louisiana, and I am the named appellee in this matter. This is an unusual case because, in this case, the trustee recommended confirmation to the bankruptcy court. To make matters more complicated, I was not the Chapter 13 trustee at the time that Judge Norman did rule that this case was filed in bad faith. There was another trustee who recommended that? Yes, Your Honor. Lucy Sykes was the Chapter 13 trustee at the time. I believe the hearing was on September 28th. I actually took over as Chapter 13 trustee in that jurisdiction on October 1st. So are you presenting a retroactive objection or something like that? No, Your Honor, and it is not my intention to defend Judge Norman's ruling that the Booker's plan was filed in bad faith. I believe it would be disingenuous of me to make that argument when the Chapter 13 trustee did recommend, even after the debtors testified, that the plan was filed in good faith. Well, but the problem— Where is the controversy? Between the— Between who? Between who is the—you don't disagree with him? Your Honor, that is an excellent question. Excuse me, sir. Why don't you let him answer? I believe he's talking to me. Go ahead. I'm sorry. Your Honor, that's a very good question. There are a lot of matters. In fact, there were three matters that were appealed from Judge Norman in which the trustee did not have an objection to the plan. There are a lot of these cases— What do you mean? Oh, go ahead. I'm sorry. Go ahead. And I can give an example. For example, there's—last week I provided two additional cases to this Court. One of them is the Briggs v. Johns case, and that's a case that is similar to this case. In that case, the trustee—I was the trustee in that matter—recommended the case for confirmation. Judge Norman also set that matter independently to determine whether the case should be confirmed. And Mr. Welch, who was the debtor's counsel, also appealed that matter. In those matters, the trustee has been named the appellee as far as their position, as far as what they're supposed to do in those cases. Honestly, I've never been involved in a case—I'm sorry, Judge Jones. Well, so you're saying that Judge Norman has been tougher on debtors than you have. Is that the bottom line? In this particular matter, I have lost—I lost many cases regarding whether a case should be confirmed or not in front of Judge Norman. There were certain issues where I raised and he approved confirmation of the plan. In this particular matter, Ms. Sykes did review the Schedule I and J, all the schedules. She reviewed the plan. She conducted the 341 meeting of creditors. She took into all the factors that Mr. Welch is— Wait a minute. If you're appearing here as appellee, we have no reason to hear you. But you're not. You're appearing as the Chapter 13 trustee who is supposed to distribute money to unsecured creditors. It is also the judge's duty under the bankruptcy law to see that the terms of the law are complied with. Is that not correct? That is correct, Your Honor. All right. And, you know, I don't think you have—I don't think you have any—you can state your personal opinion here, but you are defending the order of the court, which was that the plan was not confirmed in good faith and therefore this other plan would be substituted. Because if we rule against—if we rule in favor of the debtor, then you're going to have less money to distribute. Correct? Correct. And you're a fiduciary for the unsecured. In this matter, and if you'll review Mr. Welch's brief, there would not be any additional money to distribute to unsecured creditors. That was one of the arguments that Mr. Welch made, too. But that doesn't mean you're not the fiduciary for the unsecured. That is correct. I am the fiduciary for the unsecured. Judge Norman did confirm a plan, eventually, which proposed abandoning the boat. In that plan, it made no further distribution to unsecured creditors. There were no more unsecured creditors. If the boat was abandoned, that was going to make a difference as far— And that was argued to him? At what point was that argued—that argument made to the district court? To the district court or the bankruptcy court? I'm sorry, the bankruptcy court. That was an issue that Mr. Welch made that there was not—because the debtors had Social Security income and could reduce their— I thought he didn't make that argument in the bankruptcy court. That they had Social Security? About Social Security. I mean, he didn't argue in regoes to the bankruptcy court, correct? And that is one of the issues that I brought up in my brief. If that is correct, is that there was not a strict—that this involves Social Security income, and because of that, this case should be—this case should be deferred to be filed in good faith. This went into the reasonable and necessary aspect of district court. Look, if you're here to just support the debtor, then we'll just go home. Your Honor, I'm not— I mean, I don't quite understand what position— You are arguing everything that the debtor can argue. Yes, Your Honor. Except the equity of having a vote. The argument that the trustee made in front of the district court, the argument that the court made—the trustee made in front of this is whether— and this issue—this case is simple. It's whether Judge Norman applied the correct totality of circumstances test in the Fifth Circuit to determine whether the Booker's plan was filed in good faith. And you know he's a smart enough guy that he got moved to Houston, so you know he knows the law, don't you? He got moved to Houston. I noted in the plan he did hear the Stanley factors in Mr. Welch's argument. Judge Norman did indicate that he was applying the totality of circumstances test when he analyzed the Booker's testimony and the facts of the case to determine the plan was filed in bad faith. Do we review this as a matter of fact or finding of lack of good faith or a matter of law? I believe, Judge Jones, you've already indicated it's your belief that— I don't care about my belief. What's your belief? As far as a matter of— Testing. As far as the—as far as whether he applied the correct standard or the correct test, that would be—you would be allowed to analyze that to no vote. As far as whether he applied the totality of circumstances test correctly, that would be a clearly erroneous standard. And what do you think? Your Honor, I— Presumably you've appealed—you've appeared in front of him numerous times. Yes, Your Honor. There have been several cases and several cases that Mr. Welch has argued where Judge Norman did apply the totality of circumstances test. There are some of those cases where he applied factors that weren't part of the Stanley factors. However, Judge Norman, in his rulings, did understand how the totality of circumstances was supposed to work. He applied it, and he makes that mention in his ruling that he applies all the facts to the case to determine his ruling. That was the route he went in this case. Mr. Welch has brought up that he brought up some language regarding the fairness of the plan, fairness to creditors, the fairness in relation to the spirit of the bankruptcy code. That's language he pulled out of the N. Ray Love case. In my opinion, it looks like it's word for word out of the N. Ray Love case out of the Seventh Circuit. That circuit applies a totality of circumstances test. So it's my opinion Judge Norman did understand how to apply a totality of circumstances test. As to whether he—if I could move on—as to whether the judge was clearly erroneous in his determination, there were a lot of factors that made Ms. Sykes take the position that the plan was filed in good faith, a lot of the factors that Mr. Welch cites. As far as whether the trustee or the creditor did object to this plan, you would hope that judges would take great deference to that. They have reviewed the plan. They conducted the 341 meeting of creditors. So they've already heard most of the testimony of the debtor and the debtor's circumstances. Well, maybe he was thinking that every one of Mr. Welch's new clients was going to come in with an old boat. If that was his concern, I think he—there's got to be a case-by-case basis. And there's going to—they're trying to give the court an idea of how this trustee and the trustees that I've worked for before— Well, I mean, to be quite blunt about it, $2,200 for living room furniture, that's a lot of money. I understand, Your Honor. And, you know, the flat screen TVs and the late model cars, I mean, they've gotten sort of irresponsible in their old age. It is one of the fun practices of the Chapter 13 trustee going over these plans with Mr. Welch and all my debtors counsel. And what, in the trustees' opinion, is what's fair, what's equitable? Mr. Norman had been a trustee, hadn't he? For three years in Ohio, yes, Your Honor. They probably have boats, too. They probably do have boats. They probably have late model cars. He was in Columbus, Ohio. I think that's probably— Or American cars. They're probably a little better median income in Columbus, Ohio than in Shreveport, Louisiana. That's just me guessing. Well, you don't have to argue—I mean, you don't have to keep talking unless you want to and people have— I think I've made all my points. There were some other issues that Mr. Welch made, but I think the court's addressed them as far as the judge's actual right to independently review this case for good faith. I believe that he does have an independent right to review this case for good faith. I think that's just one of the Stanley factors as far as whether the trustee or the creditor objected. But, as I said, this matter is simple. It's whether he applied the correct standard, and if he did apply the correct standard, whether he was clearly erroneous in making that determination. Stanley seems to be the accepted law, but it's an unpublished, non-precedential Fifth Circuit decision. So, what's the precedential Fifth Circuit decision? Most cases do cite the Stanley factor. I know that those factors evolved. If you begin with the Beard case in 1983 in the Fifth Circuit, it goes over two or three factors. And then you get to the Chaffin case, and it adds a few factors. And then by the time you get to the Stanley factors, you get all seven factors that now most courts use in analyzing cases in the Fifth Circuit. So, this has been kind of an evolving standard that's happened in the Fifth Circuit. I thought you would cite it. I do have one more question. You sent us this 28J letter citing the two other cases, and I thought you were citing those to show that lack of good faith was affirmed in other cases. Lack of good faith was affirmed in other cases. In the Briggs case, lack of good faith was not affirmed. In the Briggs case, Mr. Welch had brought up an argument, and he did not discuss it today, about whether the judge did have an independent right. He cites the United Student Fund's aid. Espinoza. Espinoza, yes, Your Honor. Thank you. And a video by former bankruptcy judge Keith London to make a point that bankruptcy judges since Espinoza have been fairly, a little bit more aggressive in analyzing bankruptcy cases. Judge Foote, in the Briggs v. Johns matter, goes over the Espinoza case and also brings up the point that bankruptcy judges do have an independent right to review cases for good faith. And I agree with that opinion. In the Beraggan case also cited, that was simply a case where a good faith determination was affirmed. I think Judge Woodard did a very good job of going through the factors, analyzing them, and took in a lot of the equitable and fairness and reasonable standards that the judges that this court has discussed today. This is the Beraggan case. It's a northern district case. It was decided two Fridays ago. And this one came up from Judge Norman? I'm sorry? This case came up from, Briggs came up from Judge Norman? Yes, Your Honor. That is one of the cases that I recommended the case be confirmed, but he said it on his own. Okay. Independently. All right. Thank you. Thank you, Your Honor. Your Honors, I do want to correct one thing that I believe. Social Security is not included in current monthly income by definition, and sometimes we abbreviate that as non-CMI income. And I did argue to Judge Norman that we had non-CMI income. He knew I meant by that I was referring to the Social Security income. If he knew that, how come he didn't know he was applying the Stanley factors? No, he knows about the Stanley factors. But if you look at my brief, you'll see that in the past when he has used the totality of circumstances, both before this case and after this case, one of them is the Briggs case that was just mentioned. That was after. The other one is minor. Both of them went to Beth Foote, Judge Beth Foote. In both of them, he used the Eleventh Circuit pre-'84 totality of circumstances. So when he uses the totality of circumstances test and goes through it, he has historically used the Eleventh Circuit standards, which is more comprehensive and predates the 1984 amendments. Another point is the court asked about the dividend in this case. The dividend that the judge found acceptable was identical to the dividend that he found bad faith. The only difference being not the payment, not what was paid out, but the term. Instead of 59 months, he went back to 56 months. So by dropping those three months and surrendering or having the sacrifice, that's what the court wanted. I mean, he was sacrificing, but Heritage was getting its collateral back. Obviously, Heritage didn't want their collateral back if they wanted the money more than the collateral, or I wouldn't still be here with the debtor still having possession of this. Or maybe they did it as . . . They probably want it even less today. That may be true, and there may have been an element of cooperating with me that allowed the debtor to keep that collateral for this period of time. And I believe they disagree with the judge's thing. But none of the Stanley . . . the problem here is none of the Stanley factors or the basic good faith factors apply in this case. I don't think that one can reasonably argue a single one of them applies. Judge Norman said there was a . . . you had to apply . . . you had to be able to comply with the spirit of the code. Well, first of all, that's not exactly what the Stanley factor says. The Stanley factors ask you, did you attempt to abuse the spirit of the code? Slight difference, but I think an important difference. There's none of the other factors that apply. You can go through them. Now, Stanley never meant to be an all-exclusive list, but I can suggest others. Are you using Social Security money? All of it. That shows an element of good faith on its own, that you're contributing all of it. Unlike Regos, where you're contributing a small part, which the court said you could still look at good faith, the debtors here were contributing all of it. Of course, what they were contributing, quote, contributing, was to keep their late model cars. Yes, ma'am, and they both worked. They both had different schedules. To keep the collateral on . . . He was a supervisor. And to keep the furniture. They didn't give up anything, did they? Well, in 13, that's unusual. They gave up a vacuum cleaner to . . . Yeah, a $600 vacuum . . . Well, that's the kind of thing that people sometimes make bad choices on. Right. Well, maybe . . . But I would respectfully disagree with Your Honor about $2,300 of furniture. This is the kind of thing that I see routinely. People don't have cash to buy furniture. They end up financing their furniture. They get behind. They end up with payday loans. They go and they put their boat and their riding lawnmower, both of which they desperately need, as collateral to get a little bit of money to try to get by. They find themselves behind on their vehicle, behind on some of these loans, and they come into a bankruptcy lawyer because they're about to lose something. At that point, it never was about their budget. It was never about . . . You know what? I mean, yes, sir. And Judge Norman has seen almost as many of these as you have, right, in his wealth of experience. So that's why we have a legal issue here, or a case. Yes, ma'am. Yes. Well, anyway, it's a very interesting case. Thank you. All right. Thank you. Thank you both. Thank you, Judge Tennyson. Judge Gellar.